**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Audrie Reilly, | ) | No. CV 08-0745-PHX-JAT |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| American Family Mutual Insurance | ) | |
| Company, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pending before the Court is Plaintiff Audrie Reilly's Motion to Remand (Doc. #7). Defendant American Family Mutual Insurance Company has filed a Response in Opposition (Doc. #9), and Plaintiff filed a Reply (Doc. #12). Defendant then filed a Motion for Leave to File Sur-Reply (Doc. #13). The Court now rules on these motions.

**I. Background**

On August 27, 2005 at approximately 12:00 AM, Plaintiff was driving down U.S. 60 in Mesa Arizona when she collided with an unlit car that had been abandoned by a thief. She sustained significant injuries as a result. At the time of the accident, Plaintiff was insured by Defendant under a policy that provided uninsured motorist ("UM") coverage. Plaintiff requested the full policy limit of $50,000 for her injuries. Defendant offered to settle all claims for $10,000 and made a payment to Plaintiff in this amount. Plaintiff contended that her damages were far in excess of even the $50,000 policy limit, and on July 11, 2007 she filed a Complaint in Maricopa County Superior Court alleging contract damages and breach

of the covenant of good faith and fair dealing.

The parties opted to bifurcate the claim and stay the bad faith proceedings while conducting binding arbitration on the contract claim. Plaintiff stipulated that any compensatory damages awarded by the arbitrators would be capped at the policy limit of $50,000. The arbitration panel heard the contract case on February 21, 2008, and entered a total compensatory award for Plaintiff of $290,000 after apportionment of fault. $100,000 had already been paid to Plaintiff through another insurance policy, so the remaining award was for $190,000. The judgment against Defendant was then capped at the policy limit of $50,000 less the $10,000 already disbursed.

Following payment of the judgment by Defendant, Plaintiff filed a Motion to Lift Stay so that she could pursue her remaining bad faith claim. Defendant then filed its Notice of Removal to the United States District Court. Plaintiff filed the present Motion to Remand contending that the United States District Court has no diversity jurisdiction over this claim, as Defendant has failed to prove that the amount in controversy exceeds $75,000.

## II. Legal Standards

Pursuant to 28 U.S.C. § 1332, "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between . . . citizens of different States[.]" 28 U.S.C. § 1332(a)(1).

The removal statute, 28 U.S.C. § 1441, provides in pertinent part: "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a); *see Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only . . . actions that originally could have been filed in federal court may be removed to federal court by the defendant."). Courts strictly construe the removal statute against removal jurisdiction. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *Gaus v. Miles, Inc.*, 980

F.2d 564, 566 (9th Cir. 1992).  There is a "strong presumption" against removal, and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."  *Gaus*, 980 F.2d at 566 (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979).

"The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper."  *Id.*  "In a removed case, . . . the plaintiff chose a state rather than federal forum.  Because the plaintiff instituted the case in state court, 'there is a strong presumption that the plaintiff has not claimed a large amount in order to confer jurisdiction on a federal court[.]'" *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 375 (9th Cir. 1997) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 290 (1938)).

"Where the complaint does not demand a dollar amount, the removing defendant bears the burden of proving by a preponderance of the evidence that the amount in controversy exceeds [$75,000]." *Id.* at 376 (citing *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).  "Under this burden, the defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds [$75,000]." *Sanchez*, 102 F.3d at 404.  "[R]emoval 'cannot be based simply upon conclusory allegations' where the [complaint] is silent" as to the dollar amount of damages the plaintiff seeks.  *Singer*, 116 F.3d at 377 (citing *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995)).  "If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).

## III. Discussion

### A.  Motion to Remand

"Arizona's rules of civil procedure bar plaintiffs from stating a 'dollar amount or figure for damages' when 'pursuing a claim other than for a sum certain or for a sum which can by computation be made certain.'" *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) (quoting Ariz. R. Civ. P. 8(g)).  Thus, Plaintiff's Complaint cannot and does not

specify an amount of damages on its face.  Defendant is therefore required to "prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold." *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir 2003) (internal citations omitted).  The amount in controversy can include general damages, special damages, punitive damages, and attorney's fees.  *Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001); *Galt G/S v. JSS Scandinavian*, 1421 F.3d 1150, 1156 (9th Cir. 1998).

Evidence considered in the evaluation of damages can include facts in the removal petition and any "summary-judgment-type evidence relevant to the amount in controversy at the time of the removal." *Matheson*, 319 F.3d at 1090 (internal citations and quotations omitted).  A court may also consider jury verdicts in similar cases.  *Burk v. Med. Sav. Ins. Co.*, 348 F. Supp. 2d 1063, 1069 (D. Ariz. 2004).  Since here the issue of compensatory damages has already been resolved via the binding arbitration, Defendant must prove by a preponderance of the evidence that the remaining bad faith damages together with the requested attorney's fees would exceed $75,000 if awarded.

Defendant claims that Plaintiff is seeking the recovery of the unpaid portion of the arbitration award in the amount of $140,000.  (Notice of Removal at ¶ 2.)  Plaintiff counters that she cannot possibly be seeking this amount since she already stipulated that recovery of the arbitration award would be capped at the insurance policy limits.  (Pl.'s Mot. to Remand at 2.)  The evidence that Defendant offers to meet its burden of proof consists of: (1) a quote from Plaintiff's Motion to Lift Stay; and (2) an alleged settlement offer from Plaintiff.

In its Notice of Removal, Defendant offers the following quote from Plaintiff's Motion to Lift Stay in support of its contention that the amount in controversy is met: "'Even after allowing American Family an offset for the $100,000 in UM benefits previously paid by another insurer, American Family's responsibility is $190,000.00, . . . !'" (Notice of Removal at 2.)  Although this excerpt from Plaintiff's Motion does appear at first glance to be a demand for the full arbitration amount, this conclusion is far from obvious once the

quote is read within the full context of the Motion.[1]

Indeed, Plaintiff contends that this assertion was not a reflection of what she believed the value of her claim to be. Rather, the statement was included to lend support to the overall legitimacy of her bad faith claim. The comment was included in her Motion to Lift Stay, which suggests that Plaintiff was simply using it as support for the position that the Superior Court should "lift the stay" on her bad faith claim. The disparity between the arbitration award and the initial settlement offer by Defendant may be evidence that Defendant acted in bad faith and that Plaintiff's claim is not frivolous. However, the award is not necessarily indicative of what the jury would determine the amount of damages to be if they found in Plaintiff's favor. The arbitration award was for compensatory damages only, and these damages were capped at the policy limit as stated above. It will be for the jury to determine the amount of bad faith damages, if any. Presently these damages are still speculative, and the arbitration award does not alone show that they are more likely than not to exceed $75,000.

---

[1]The relevant portion of Plaintiff's Motion to Lift Stay reads:

On February 21, 2007, the arbitration panel rendered a decision in favor of Plaintiff finding her full damages, before the apportionment of fault, to be $386,667.00. The arbitrators found Plaintiff's degree of fault to be 25% and therefore awarded Plaintiff a total of $290,000.00. (Exhibit 1). This amount is 29 times American Family's offer of $10,000. Even after allowing American Family an offset for the $100,000.00 in UM benefits previously paid by another insurer, American Family's responsibility is $190,000.00, 19 times greater than its top offer! Plaintiff had a $50,000.00 UM policy with American Family, of which American Family tendered $10,000.00. Plaintiff submitted a form of Judgment for the UM claim, which this court signed April 1, 2008.

Now that Plaintiff has set the value of her claim through an arbitration panel, and proved that American Family's offer was an [sic] low-ball offer similar to the conduct of State Farm in *Zilisch v. State Farm*, Plaintiff requests that the Court enter its order lifting the Stay so that Plaintiff may proceed with her bad faith claim.

(Pl.'s Mot. to Lift Stay at 2-3.)

Defendant also alleges that Plaintiff made a settlement offer for the full amount of the arbitration award. "A settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (citing *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 428-30 (7th Cir. 1997)).  However, Plaintiff's alleged offer is not a settlement "letter" since it does not appear that it was ever put in writing.  The sole evidence that this offer was even made is an affidavit from one of Defendant's own attorneys, Lynn Allen. This affidavit relates Ms. Allen's interpretation of a telephone conversation that she had with Plaintiff's attorney.  Ms. Allen states that she "unequivocally understood the phone call . . . to have been a settlement/demand offer in the amount of $140,000." (Allen Aff. at ¶ 9.) Plaintiff claims that this story "departs so drastically from the actual conversation" that it must be "a concocted story in an attempt to achieve federal jurisdiction."  (Pl.'s Reply Supporting Mot. to Remand at 3.)

Thus, the only remaining evidence that the amount in controversy is likely to exceed $75,000 is an affidavit whose factual basis is disputed.  Defendant has not offered any further evidence, such as verdicts in analogous jury cases to show that the amount in controversy comes close to this figure.  Therefore, Defendant has failed to establish by a preponderance of the evidence that the amount of controversy in the present case exceeds $75,000.

**B.  Plaintiff's Request for Attorney's Fees**

Finally, Plaintiff requests attorney's fees on the grounds that Defendant lacked an "objectively reasonable basis" to remove the case.  "Absent unusual circumstances, courts may award attorney's fees under [28 U.S.C.] § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  "The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford

1    defendants a right to remove." *Id.* at 140.

2          While Defendant may have failed to meet its burden of proof, the Court does not find

3    that Defendant necessarily lacked an objectively reasonable basis for removal.  If Defendant

4    did indeed interpret its telephone exchange with Plaintiff as a settlement offer in the amount

5    of $140,000 it is entirely possible that Defendant assumed that its representation of the phone

6    call would not be contested by Plaintiff.

7          Further, there is no evidence that Defendant has used removal as a delay or cost-

8    imposing tactic. Certainly, time is of the essence in a bad faith insurance claim where

9    excessive delay may already have been imposed.  However, awarding costs for what could

10   have been a simple misunderstanding of a party's intent may over-deter an out of state party

11   from obtaining the protection of the federal forum to which he is entitled.  Accordingly,

12   Plaintiff's request for attorney's fees is denied.

13         For the foregoing reasons,

14         **IT IS ORDERED** that Plaintiff's Motion to Remand (Doc. # 7) is **GRANTED** in part

15   and **DENIED** in part consistent with this Order;

16         **IT IS FURTHER ORDERED** that this case be remanded to the Maricopa County

17   Superior Court.

18         **IT IS FURTHER ORDERED** that Defendant's Motion for Leave to File Sur-Reply

19   (Doc. #13) is **DENIED** as moot.

20         DATED this 21st day of July, 2008.

21

22

23

24   _____
                    James A. Teilborg
25                  United States District Judge

26

27

28
                                    - 7 -